IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REBECCA PERKINS,

Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant.

Civil No.05-1815-AA

OPINION AND ORDER

TIM WILBORN
Wilborn & Associates
2020-C SW 8th Avenue, PMB #294
West Linn, OR 97068-4612
Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

MICHAEL McGAUGHRAN
Regional Chief Counsel
RICHARD A. MORRIS
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
    Attorneys for Defendant

AIKEN, District Judge:

Plaintiff Rebecca Perkins seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

## BACKGROUND

Born in 1975, Perkins has a twelfth grade education. Tr. 57, 74. Between 1997 and 2003 she worked as a medical receptionist and financial secretary. Tr. 69. Perkins contends she has been disabled and unable to work because of her impairments since June 2003. Tr. 57, 244. Perkins applied for DIB and SSI on June 13, 2003. Tr. 57-59, 244-45. These applications were initially denied. Tr. 28-32, 246-49. A hearing was held before an Administrative Law Judge (ALJ), who again denied Perkins' application. Tr. 16-22. The Appeals Council denied review on October 7, 2006, making the Commissioner's decision final. Tr. 6-8. Perkins presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 107 S. Ct. 2287, 2291 (1987). Perkins challenges the ALJ's evaluation of the

evidence and his conclusions at steps three and four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I) , 416.920(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1520, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a); Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(iv). If the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. *Yuckert*,107 S. Ct. at 2291; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step the burden shifts to the Commissioner to show that the

claimant is able to perform jobs existing in the national economy. *Yuckert*, 107 S. Ct. at 2291; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g), 416.920(g).

**THE ALJ'S FINDINGS**

In his June 2005 decision, the ALJ found Perkins' migraine headaches "severe" within the meaning of the Regulations. Tr. 18. The ALJ assessed Perkins' RFC:

> [T]he claimant retains the residual functional capacity to lift up to 20 pounds occasionally and up to 10 pounds frequently. She can stand and walk for a total of about 6 hours in an 8-hour workday. She can sit for a total of about 6 hours in an 8-hour workday.

Tr. 20. Based on these findings, the ALJ found that Perkins was able to perform her past relevant work. Tr. 20, 21. The ALJ also found that Perkins could perform a significant number of jobs in the national economy. Tr. 20, 21. The ALJ therefore determined that Perkins was not disabled under the Act at any time through the date of his decision. Tr. 21-22.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational

reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Perkins contends that the ALJ failed to reach an accurate RFC assessment because he failed to credit Perkins' testimony, improperly evaluated the medical evidence, failed to consider whether Perkins' impairments equaled a listed disorder, and improperly evaluated lay witness testimony.

### I. Medical Source Statements

Perkins alleges the ALJ improperly rejected the opinions of treating necrologists Drs. Lockfeld and Moser. Plaintiff's Opening Brief, 16. The ALJ rehearsed Lockfeld's notes, emphasizing his improvement findings. Tr. 17. The ALJ did not discuss Moser's opinion. The ALJ also failed to discuss numerous emergency room reports and treatment notes from Perkins' treating general practitioners.

#### *1. Emergency Room Physicians*

Perkins visited Eugene emergency rooms with headache complaints four times in 2002 and three times in May 2003. Tr. 134-36, 156-86. Emergency room physicians noted Perkins' reported symptoms, including pain and observed vomiting, and treated her with Vicadin. *Id.* These physicians made no finding regarding Perkins' diagnosis or prognosis, instructing her to follow up with her general practitioners, discussed below.

#### *2. General Physicians Garfinkel, Rice, and Vogt*

In Eugene, Perkins sought treatment from general practitioners Drs. Garfinkel and Rice between April and June 2003. Tr. 178-181. Both noted her complaints of headaches with light sensitivity and nausea. Tr. 181. Garfinkel prescribed Topomax and noted Perkins did not benefit from Imitrex drug therapy. Tr. 180. Their notes do not establish the frequency with which Perkins'

headaches occurred during this period.

*3. Treating Neurologists Lockfeld and Moset*

In May 2003, Perkins began treatment with neurologist Dr. Lockfeld. Lockfeld initially assessed Perkins' with "underlying classic migraine and [she] now has analgesic overuse with rebound headaches or transformed migraines." Tr. 191. In June 2003, Lockfeld noted that Perkins' headaches were "incrementally better," and that her MRI exam was normal. Tr. 197. He believed she had "probably transformed migraine headaches, now improving." Tr. 197. In July 2003, Lockfeld noted Perkins' report of chronic daily headaches. Tr. 195. In August 2003 Lockfeld revised his assessment to "refractory vascular headaches." Tr. 186. His diagnoses are supported by clinical testing and notes. Tr. 186-193.

Perkins subsequently received neurological treatment from neurologist Dr. Moser after apparently relocating to the Dalles. In May 2004, Moser noted that Perkins' headaches had improved with Topomax and clonazepam. Tr. 213. In June 2004 Moser noted Perkins' report of two to three headaches per week. Tr. 237. Moser authorized treatment including Botox injections and drug therapy. Tr. 236, 238. Moser assessed Perkins' complaints as "stereotyped headaches." Tr. 238.

*4. The ALJ's Analysis*

Here, the ALJ failed to cite all treating sources other than Lockfeld. In reviewing Lockfeld's notes, the ALJ observed Lockfeld's comments regarding "improvement," but failed to note Perkins subsequently experienced continued headaches. However, an ALJ cannot selectively credit some evidence in the record while disregarding other evidence. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), *Magallanes*, 881 F.2d at 750.

The ALJ instead relied upon Disability Determination Services (DDS) reviewing physicians,

giving them "significant weight."[1] Tr. 19. A treating physician's opinion is accorded greater weight than that of a reviewing physician. *Edlund*, 253 F.3d at 1157. Additionally, a reviewing physician alone cannot constitute substantial evidence justifying rejection of an examining or treating physician. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). The ALJ's reliance on DDS opinions rather than those discussed above was inappropriate and is not sustained.

An ALJ is not required to discuss evidence neither significant nor probative. *Howard*, 341 F.3d at 1012. Here the ALJ failed entirely to discuss three treating physicians and emergency room treatment notes. Such an omission cannot be construed as "insignificant" under *Howard*. The ALJ's analysis of the medical evidence is therefore not sustained. Accordingly, the ALJ's light RFC assessment is not sustained.

**II. Perkins' Credibility**

The ALJ found Perkins "not entirely credible in light of the medical evidence." Tr. 18. The ALJ also cited Perkins' work history "although she claims she has had migraines since junior high school, " and briefly noted Perkins' daily activities. Tr. 19.

The ALJ must provide clear and convincing reasons for discrediting a claimant's symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In construing his findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties

---

[1] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Because the ALJ's evaluation of medical evidence is not sustained as discussed above, this court cannot sustain a credibility finding referring to the medical evidence.

The ALJ cited Perkins' work history as evidence that she could work despite her history of migraines. Tr. 19. Perkins suggests that a sporadic or erratic work history points to a finding of disability, relying on *Gatliff v. Commissioner of Social Security Administration*, 172 F.3d 690 (9th Cir. 1999). However, in *Gatliff*, the claimant occupied twenty to thirty jobs within fifteen years and was unable to retain employment due to his personality disorder. *Gatliff*, 172 F.3d at 691. Perkins' work history is not analogous to that scenario. Perkins reports employment between 1994 and 2003, changing jobs five times in ten years. Tr. 69. *Gatliff* does not apply to the present case. *See also Lewis v. Apfel*, 236 F.3d 503, 516 (9th Cir. 2001). The ALJ's consideration of Perkins' work history is sustained.

Additionally, the ALJ cited Perkins' reported ability to shop, prepare meals, perform household chores, use a treadmill, and pay bills as contradictory to her alleged inability to work. Tr. 19. Daily activities inconsistent with alleged disability may support a negative credibility finding, but sporadic completion of daily activities, such as those above, is not equivalent to full time employment. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The court does not find the identified activities inconsistent with Perkins' medical record, as discussed above. A claimant need not "vegetate in a dark room," to be found disabled. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The ALJ's cursory analysis of Perkins' activities is not sustained.

In conclusion, this court does not sustain the ALJ's overall credibility analysis because it primarily relies upon the medical evidence, discussed below, and a very brief citation of Perkins' activities of daily living. The ALJ's notice of Perkins' work history is appropriate, but does not provide sufficient evidence to sustain the ALJ's finding.

**III. Lay Witness Testimony**

Perkins suggests the ALJ failed to properly evaluate lay witness testimony submitted by her former roommate, Loren Bjurling, and her mother, Pricilla Platisha. Plaintiff's Opening Brief, 15. The ALJ "considered" statements from both, but found "the lay statements are of limited use in the evaluation of the claimant's residual functional capacity." Tr. 19. The ALJ continued:

> [N]either Mr. Bjurling nor Ms. Platisha is trained to critically evaluate whether the claimant's complaints are exaggerated or inconsistent with objective evidence. Additionally, they lack the vocational expertise necessary to support a conclusion the claimant is unable to work. There is more reliable evidence of record from examining medical professionals who are trained to evaluate impairments and their impact on functional capacity.

Tr. 19-20.

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Dodrill*, 12 F.3d at 918. The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Lewis*, 236 F.3d at 512, *Nguyen*, 100 F.3d 1462, 1467 (9th Cir. 1996). If an ALJ

rejects lay witness testimony entirely, he must give reasons germane to the witness. *Id.* Here, the ALJ failed to do so. Noting that Bjurling and Platisha are not medical experts fails to establish a germane reason for rejecting their observations. Accordingly, the ALJ's lay witness evaluation is not sustained.

**IV. The ALJ's Step Three Finding**

Perkins argues that the ALJ failed to find her migraine headaches "meet or equal" the listing for epilepsy. Plaintiff's Opening Brief, 11. This court is puzzled by Perkins' citation to the epilepsy listing for migraine headaches. Plaintiff's Opening Brief, 11. While epilepsy and migraine symptoms may both preclude a claimant from working, Perkins' migraines do not suggest any seizure history. Such a finding precludes meeting or equaling the epilepsy listing. 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 11.03. Perkins' argument that her migraine headaches meet or equal listing 11.03 fails.

**REMAND**

After finding the ALJ erred in his decision denying Perkins' application for benefits, the court must determine the proper remedy. This court has discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). Thus, improperly rejected evidence should be credited as true and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that

must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (citing *Smolen*, 80 F.3d at 1292). However, where it is not clear the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion to credit the evidence or not. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

Here, the ALJ improperly rejected Perkins' testimony and failed to address the opinions of Drs. Lockfeld, Moser, Vogt, and emergency room physicians. The ALJ also failed to give adequate reasons for rejecting lay witness testimony. However, even if credited, this evidence does not clearly establish disability. Perkins testified that her migraines prohibit her from working because they occur five or six days per week. Tr. 266. Physician testimony does not establish vocational limitations. Further proceedings are necessary for the ALJ to properly evaluate Perkins' credibility, the medical evidence, and lay witness testimony. The ALJ must then reassess Perkins' RFC accordingly, and obtain additional VE testimony, if necessary.

**CONCLUSION**

This court finds that the Commissioner's decision that Perkins did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is not based upon correct legal standards. The case is REVERSED AND REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 27 day of November, 2006.

Ann Aiken
Ann Aiken
United States District Judge